# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

|  |  |  |
|---|---|---|
| JOHN AND ROWENA DRENNEN, | ) | |
| DAVID A. AND DIANE GARNER, | ) | |
| SHAWN AND LORENE STARKEY, | ) | |
|  | ) | |
| Plaintiffs, | ) | Case No. _____ |
|  | ) | |
| vs. | ) | |
|  | ) | |
| COMMUNITY BANK OF NORTHERN | ) | |
| VIRGINIA, n/k/a MERCANTILE BANKSHARES | ) | |
| CORPORATION, | ) | |
| a Maryland corporation | ) | |
| SERVE: | ) | |
| CSC Lawyers Incorporating Service Co., | ) | |
| 11 East Chase Street | ) | |
| Baltimore, Maryland 21202 | ) | |
|  | ) | |
| and | ) | |
|  | ) | |
| GUARANTY NATIONAL BANK, | ) | |
| OF TALLAHASSEE | ) | |
| a National Bank | ) | |
| SERVE: | ) | |
|     William A. Dyess | ) | |
|     As Receiver | ) | |
|     Federal Deposit Insurance Corporation | ) | |
|     801 17th Street, N.W. (H-11072) | ) | |
|     Washington, D.C. 20434 | ) | |
|  | ) | |
| and | ) | |
|  | ) | |
| GMAC-RESIDENTIAL FUNDING | ) | |
| CORPORATION | ) | |
| a Minnesota corporation | ) | |
| SERVE: | ) | |
|     C T Corporation System | ) | |
|     120 South Central Avenue | ) | |
|     Clayton, Missouri 63105 | ) | |
|  | ) | |
|  | ) | |
| and | ) | |
|  | ) | |

HOMECOMINGS FINANCIAL NETWORK,    )
INC.    )
a Delaware corporation    )
SERVE:    )
     The Corporation Company    )
     120 South Central Avenue    )
     Clayton, Missouri 63105    )
   )
       Defendants.    )

## COMPLAINT FOR DAMAGES

The above-named plaintiffs state and allege the following for their Complaint for Damages:

## THE NATURE OF THE PLAINTIFFS' CLAIMS AND GROUNDS FOR RESCISSION

1. This action is brought by some six (6) Missouri homeowners victimized by the predatory lending practices of Community Bank of Northern Virginia ("CBNV") and Guaranty National Bank of Tallahassee ("GNBT") (collectively, sometimes referred to as the "Defendant Banks"), along with GMAC-Residential Funding Corporation ("GMAC-RFC") and Homecomings Financial Network, Inc. ("Homecomings").

2. Each of the Plaintiffs is a person that opted out of a national class action settlement in *In re Community Bank of Northern Virginia and Guaranty National Bank Second Mortgage Loan Litigation*, Case No. 03-0425, in the United States District Court for the Western District of Pennsylvania. That settlement is the subject of thirteen separate appeals now pending in the United States Court of Appeals for the Third Circuit.

3. Each Plaintiff is a member of the putative class in the matter styled Hobson v. Irwin Union Bank et al., CV-04-C-2351-W, filed in the United States District Court for the Northern District of Alabama and now part of a multidistrict proceeding, MDL No. 1674, pending in the United States District Court for the Western District of Pennsylvania. In the Hobson matter,

2

separate claims for violations of the Truth in Lending Act ("TILA"), the Home Ownership and Equity Protection Act ("HOEPA"), the Real Estate Settlement Procedures Act ("RESPA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO") are asserted on these Plaintiffs' behalf.

4.   The Plaintiffs' claims set forth herein seek to enforce rescission rights and damages for Defendants failure to honor a proper demand for rescission.   These claims asserted herein arise under the Truth In Lending Act ("TILA") as amended by HOEPA, at 15 U.S.C. §§ 1601 *et seq.* and are separate and in addition to the claims asserted on the instant Plaintiffs' behalf in the Hobson matter.

5.   The Plaintiffs' claims asserted herein are timely pursuant to 15 U.S.C.§§ 1635(f) and 1640(e) and as otherwise tolled by the pendency of the class action litigation in the *In re Community Bank of Northern Virginia and Guaranty National Bank Second Mortgage Loan Litigation* matter.   Plaintiffs were within the description and definition of the putative class asserted in putative class actions consolidated into the *In re Community Bank of Northern Virginia and Guaranty National Bank Second Mortgage Loan Litigation* matter and their claims, from which their right to recession derives, were within the factual premise and scope of the litigation.

6.   Defendant   GMAC-RESIDENTIAL   FUNDING   CORPORATION   (sometimes referred to below as "GMAC-RFC") purchased the second mortgage loans that are the subject of this action and charged and received monthly payments from the borrowers of the second mortgage loans that are the subject of this action.

7.   Defendant HOMECOMINGS FINANCIAL NETWORK, INC. ("Homecomings") acts as the servicer and agent for GMAC-RFC as to the Plaintiffs' loans and charged and

received monthly payments from the borrowers of the second mortgage loans that are the subject of this action. GMAC-RFC and Homecomings stand in the shoes of the Defendant Banks just as if they had made the second mortgage loans under HOEPA, 15 U.S.C. § 1641(d), and under the Missouri common law of assignee liability.

8.  The Plaintiffs' claims arise from the use of CBNV and GNBT as straw fronts in a "rent a charter" predatory lending scheme that, among other things, involved victimizing borrowers through charging them enormous loan origination and finders' fees, title charges, and fees that were neither reasonable nor bona fide.

9.  The predatory lending scheme was the brainchild of the Shumway brothers (David, DeVan and Chris) and Randy Bapst (collectively the "Shumway Organization") done, initially, through their companies, Equity Plus LLC and Equity Plus Financial Inc. (hereinafter "Equity Plus") and later through its successor, Equity Guaranty LLC ("Equity Guaranty"). These entities and other affiliated companies, including Title America LLC, USA Title LLC and Resource Title, LLC, were used as part of an elaborate scheme to make predatory second mortgage loans nationwide by preying upon debt laden homeowners. The plan included using at first CBNV, and later GNBT, as "fronts" for the lending operations that were, in fact, controlled and run by Equity Plus as to CBNV and then Equity Guaranty as to GNBT. This plan was based upon the idea that using federally insured banks or national banks would insulate the Shumway Organization from liability under state consumer protection or fair lending laws.

10. The Plaintiffs were the victims of a predatory lending scheme to charge to them bogus, excessive and illegal fees and charges on their loans, together with charging high interest rates, all as part of a scheme to make high-cost loans to borrowers across the country, including borrowers in the State of Missouri. Such bogus and illegal fees were falsely characterized as and

represented to be origination fees, loan discount fees or other charges and fees to be paid to CBNV or GNBT and title charges and fees to be paid to third-party title companies. Instead, these bogus fees and charges were being paid directly or indirectly, in whole or in substantial part, to the Shumway Organization, including primarily, Equity Plus and/or Equity Guaranty or their affiliated entities, in an effort to avoid consumer protection laws and regulation of Defendants' lending practices.

11. Each of the plaintiffs obtained a second mortgage loan from one of the Defendant Banks. As an incident to or a condition of the banks' extension of credit to Plaintiffs, the banks charged the Plaintiffs certain fees and charges to be paid directly or indirectly by the Plaintiffs in order to obtain the second mortgage loans.

12. Each such loan is a "high-cost" loan under the Home Ownership and Equity Protection Act ("HOEPA"), at 15 U.S.C. § 1602(aa) and 12 C.F.R. § 226.32(2), by virtue of having met the fee and cost trigger or the annual percentage rate ("APR") trigger, or both.

13. At the time that the Plaintiffs' loans were made, the Defendant Banks completed HOEPA Disclosures and Assignment Notices which identified and admitted pursuant to 15 U.S.C. §§ 1639(a)&(b) and 1641(d)(4) that the Plaintiffs' loans were HOEPA loans..

14. Upon purchase of the loans, Defendants GMAC-RFC and Homecomings reviewed the Defendant Banks' HOEPA calculations and made their own to confirm that the loans were HOEPA loans.

15. TILA, as amended by HOEPA, at 15 U.S.C. §§ 1602(u), 1638, 1639, and its implementing regulation, Regulation Z, require creditors to make timely and accurate disclosures of "material" information to borrowers to promote the "informed use of credit." The "material" information includes the "annual percentage rate, the method of determining the finance charge

and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness," and the disclosures required by HOEPA at § 1639(a).

16. In connection with this scheme the Defendant Banks made multiple violations of TILA and HOEPA at 15 U.S.C. §§ 1638 and 1639 because they made inaccurate disclosures of the Finance Charges and the APR on the Plaintiffs' loans.

17. Certain tolerances for accuracy are allowed at 15 U.S.C. §§ 1605(f), 1610(c) and Regulation Z, at 12 C.F.R. § 226.22 and 226.23 for the disclosure of the Finance Charge and Annual Percentage Rate.

18. When calculating the borrowers' Finance Charges and the APRs for the purpose of making the TILA and HOEPA-required disclosures, the Defendant Banks were only allowed to exclude from their calculations certain settlement charges that were "bona fide" and "reasonable" in amount and that were paid to "true" third parties as contemplated by TILA and HOEPA.

19. The Defendant Banks falsely and incorrectly represented that the amounts charged to the Plaintiffs as title charges in section 1100 of the Plaintiffs' HUD-1s for such things as "abstract or title searches" (line 1102), "title examinations" (line 1103) and "document reviews" (line 1112) were "bona fide" and "reasonable" and paid to "true" third parties, when, in fact, they were not, and were being used directly or indirectly to further the rent-a-charter predatory lending scheme and to provide kickbacks and unearned fees to the Shumway Organization, Equity Plus, Equity Guaranty and their associated entities, and that the Defendants GMAC-RFC and Homecomings were directly or indirectly profiting from such fees. Further, in each instance, the defendant banks required the use of the title companies (USA Title or Title America or

6

Resource Title and their affiliated entities) as a condition of or an incident to the extension of credit, required the imposition of the charges, and retained a portion of the charges.

20. These title-related fees and charges set forth in Section 1100 of the Plaintiffs' HUD-1s were neither bona fide nor reasonable and were not, in fact, paid to "true" third parties.

21. Accordingly, all of the Section 1100 certain settlement charges that should have been *included in the calculation* were instead wrongfully excluded from the calculation of the Finance Charge and APR. The defendant banks, as a routine and typical practice, as evidenced from the HUD-1s and the Truth in Lending Disclosure Statements that they provided to the Plaintiffs, including the loan documents of Plaintiffs, *excluded* the bogus, excessive and unnecessary "abstract or title search fees" (line 1102) and "title examination fees" (line 1103) charged to the Plaintiffs when they should have been *included* in the Finance Charge. Consequentially, the Finance Charges and the APRs disclosed to the Plaintiff borrowers were materially inaccurate and therefore in violation of TILA and HOEPA at 15 U.S.C. §§ 1605(f), 1606(c), 1639, 1640 and HOEPA's implementing regulations, Regulation Z, at 12 C.F.R. §§ 226.22, 226.23, and which violations rise to actions for damages and rescission of the loans under HOEPA and Regulation Z.

22. Because certain of the section 1100 title charges were improperly excluded from the calculation of the Finance Charge and should have been included in the calculation of the Finance Charge, in each and every instance the Disclosed Finance Charge on the Plaintiffs' loans was understated, and varied from the Actual Finance Charge by more than $100. Further, the Disclosed Finance Charge varied by more than one half of one percent of the total amount of credit extended to Plaintiffs as set forth in their promissory notes. As a result, the Disclosed

Finance Charges were inaccurate and violated TILA and HOEPA at 15 U.S.C. §§ 1605(f), 1635, 1638 and 1639 and Regulation Z, at 12 C.F.R. § 226.23.

23. Further, having improperly calculated the Finance Charges, the Defendant Banks inaccurately disclosed the Annual Percentage Rate (APR) on the loans of the Plaintiffs. In each and every instance, as evidenced from the HUD-1s and the Truth in Lending Disclosure Statements that they provided to the Plaintiffs, the Defendant Banks disclosed APRs that were understated from the properly calculated and Actual APR.

24. In each and every instance, the Disclosed APR was understated by more than 1/8% or .125%. As a result, the Disclosed APRs were inaccurate and violated TILA and HOEPA at 15 U.S.C. §§ 1606(c), 1635, 1638 and 1639 and Regulation Z, at 12 C.F.R. § 226.22.

25. In connection with this scheme the Defendant Banks also violated TILA and HOEPA because they failed to provide timely HOEPA disclosures. HOEPA, among other things, also requires that lenders give certain notices to borrowers in a timely fashion so that the prospective borrower can make an informed decision while under no "sales" pressure about whether they want to go forward with a loan for which they are giving a security interest in their home. Specifically, under HOEPA, at 15 U.S.C. §1639(b)(1) expressly required the Banks to provide certain HOEPA disclosures "not less than three *business* days _**prior**_ to consummation of the transaction." The loan transactions were consummated on the date of closing.

26. The Defendant Banks, as directed by the Shumway Operation, failed to timely provide such notices but, in fact, first provided the required HOEPA Notice with the closing papers for such loans and less than 3 business days before the consummation of such loans.

27. Because the HOEPA Notices were defective as a matter of law for understatement of the true APR and finance charge, they did not comply with TILA or HOEPA regardless of when they were purportedly delivered.

28. A borrower's remedy for violations of TILA and HOEPA in the nature described above includes the ability to demand and obtain a rescission of the loan. 15 U.S.C. § 1635.

29. As to each of the 3 loans at issue in this suit the borrowers timely made a proper written request for rescission to the appropriate Defendant Bank (the originating lender), to GMAC-RFC (the current holder) and Homecomings Financial (the loan servicer). Each such request was rejected.

30. The specific written request setting forth the notice of exercise of the right of rescission and the refusal of the Defendant Bank(s) and/or GMAC-RFC and Homecomings to honor that right are attached as following and incorporated herein by reference:

*Exhibits A-1 and A-2:* Notice of exercise of right to rescind letter dated June 14, 2004 and faxed on June 19, 2004 from Rowena Drennen to GMAC-RFC, Homecomings Financial and FDIC, as receiver for Guaranty National Bank of Tallahassee and Letter from Roy Arnold, Esq., counsel for GMAC-RFC and Homecomings Financial to Rowena Drennen, dated July 28, 2004, rejecting the Ms. Drennen's demand for rescission of her loan.

*Exhibits B-1 and B-2:* Notice of exercise of right to rescind letter dated June 14, 2004 and faxed on June 19, 2004 from David and Diane Garner to GMAC-RFC, Homecomings Financial and Community Bank of Northern Virginia and Letter from Roy Arnold, Esq., counsel for GMAC-RFC and Homecomings Financial, to Mr. and Mrs. Garner, dated July 28, 2004, rejecting the Garners' demand for rescission of their loan.

*Exhibits C-1 and C-2:* Notice of exercise of right to rescind letter dated June 14, 2004 and faxed on June 19, 2004 from Shawn and Lorene Starkey to GMAC-RFC, Homecomings Financial and FDIC, as receiver for Guaranty National Bank of Tallahassee and Letter from Roy Arnold, Esq., counsel for GMAC-RFC and Homecomings Financial to Mr. and Mrs. Starkey, dated July 28, 2004, rejecting the Starkeys' demand for rescission of their loan.

## THE PARTIES, JURISDICTION AND VENUE

### THE PLAINTIFFS

31. Plaintiffs John and Rowena Drennen are lawfully married individuals who reside at 2703 N. Bellefontaine Avenue, Kansas City, Clay County, Missouri 64117.

32. Plaintiffs David A. and Diane Garner are lawfully married individuals who reside at 4930 South Westfield Avenue, Republic, Greene County, Missouri 65738.

33. Plaintiffs Shawn and Lorene Starkey are lawfully married individuals who reside at 1461 Spruce Avenue, Liberty, Clay County, Missouri 64068.

### DEFENDANTS

34. Defendant COMMUNITY BANK OF NORTHERN VIRGINIA ("CBNV") was at the time of the making of the Plaintiffs' loans, a Virginia state chartered, federally insured bank. Subsequently, CBNV was purchased by Mercantile Bankshares Corporation, a Maryland Corporation. CBNV can be served with process in accordance with the information set forth in the caption of this Complaint for Damages.

35. Defendant GUARANTY NATIONAL BANK OF TALLAHASSEE ("GNBT") was at the time of the making of the Plaintiffs' loans a national bank. On March 12, 2004, the Office of the Comptroller of the Currency, GNBT's federal regulator, shut down GNBT and appointed the Federal Deposit Insurance Corporation ("FDIC") over this failed institution. The

OCC's news release regarding the closure of GNBT disclosed that "Problem areas included a high loan-to-value home equity lending program which the bank failed to properly oversee and which led to substantial losses [and] [t]he OCC found numerous violations of *consumer laws* in this lending program ....". (Emphasis added). Upon information and belief, the "lending program" described by the OCC is the very same lending program that is the subject of this action — a predatory lending scheme first fostered by CBNV and thereafter continued by CBNV and GNBT. The "consumer laws" violated consist principally of universal, across-the-class violations of the Truth-in-Lending Act ("TILA"), the Home Ownership and Equity Protection Act ("HOEPA") and the Real Estate Settlement Procedures Act ("RESPA"). GNBT can be served with process in accordance with the information set forth in the caption of this Complaint for Damages.

36.     Defendant GMAC-RESIDENTIAL FUNDING CORPORATION (sometimes referred to above and below as "GMAC-RFC") is a Delaware corporation with its principal place of business in Minnesota and is a 100% subsidiary of GMAC-RFC Holding Corporation. GMAC-RFC can be served with process in accordance with the information set forth in the caption of this Complaint for Damages.

37.     Defendant HOMECOMINGS FINANCIAL NETWORK, INC. ("Homecomings") is a Delaware corporation (and was known as "a GMAC Company") and can be served with process in accordance with the information set forth in the caption of this Complaint for Damages.

38.     Federal question jurisdiction is proper under 28 U.S.C. § 1331 as the federal claims asserted arise under federal law.

11

39.     Venue and personal jurisdiction are proper in this Court pursuant to recognized principles of due process and in accordance with 28 U.S.C. § 1391.

40.     Defendants are subject to the specific jurisdiction of this Court because Defendants, either directly or indirectly, and by virtue of their participation in a joint venture or conspiracy to make and fund high cost predatory loans in this judicial district and the State of Missouri and by their commission of acts in furtherance of the joint venture and conspiracy and the "rent-a-charter" predatory lending scheme have purposefully directed their activities towards Missouri residents and because the Plaintiffs' causes of action arise out of and relate to the Defendants' activities within this judicial district and the State of Missouri.

41.     Additionally, Defendants are subject to the general jurisdiction of this Court because they have substantial, continuous, and systematic contacts with the State of Missouri. By virtue of their "rent-a-charter" scheme, joint venture and conspiracy, the Defendants have made and/or acquired no less than 750 loans or about $22.5 million dollars worth of loans to Missouri residents. The Assignee Defendants have funded and/or purchased tens of thousands of second mortgage loans made to Missouri borrowers, and have liens on thousands of pieces of real property in Missouri (which was used as collateral for second mortgage loans) and the power of the Missouri courts to enforce those liens, which they have undoubtedly done in the past. Each of these tens of thousands of borrowers, including the CBNV and GNBT borrowers, make monthly payments on their second mortgage loans, and the Defendants all profit either directly or indirectly from the revenue stream generated by the thousands of Missouri second mortgage loans that they own. Simply put, the Defendants are in the business of funding and purchasing and servicing second mortgage loans, and such activities are central to the conduct of

12

their business, and the funding and purchase of Missouri second mortgage loans is substantial and continuous.

42.     Additionally, the Defendants GMAC-RFC and Homecomings have registered agents in Missouri.

43.     Defendants' contacts with Missouri are sufficient, substantial and continuous, and the Plaintiffs' causes of action arise from and relate to those contacts so that the maintenance of the suit in this Court does not offend traditional notions of fair play and substantial justice and Defendants should reasonably anticipate being haled into this Court in this judicial district in Missouri to answer for the above described unlawful acts.

44.     Venue is proper in this Court because certain of the Plaintiffs reside in this judicial district, because the Defendants "reside" in this district by virtue of each of them being subject to personal jurisdiction in this judicial district, because Defendants regularly solicited and did business and transacted their affairs in this judicial district and hold or held interests in real property in this judicial district, and because a substantial part of the events giving rise to the Plaintiffs' claims occurred in this judicial district.

## THE PLAINTIFFS' LOANS

### JOHN AND ROWENA DRENNEN

45.     In the summer of 2001, John and Rowena Drennen received a solicitation in the mail indicating that they had been pre-approved for a debt-consolidation second mortgage loan with GNBT.

46. The Drennens contacted GNBT to apply for a second mortgage loan. While they believed they were dealing with a bank, they were, in fact, dealing with the Shumway Organization and Equity Guaranty.

47. GNBT and/or the Shumway Organization and Equity Guaranty, through the mails or wires, obtained the Drennens' credit report and approved their second mortgage loan.

48. On or about July 28, 2001, GNBT closed the Drennens' loan in Missouri. On this date, the Drennens first received their TILA and HOEPA disclosures.

49. In connection with the above-alleged predatory lending scheme, the Shumway Organization, using GNBT as its front, loaned the Drennens a total loan of $47,100.00 to be repaid with interest (15.99%) in consecutive monthly installments over a period of 25 years. The loan was a consumer loan obtained for personal, family or household purposes.

50. To secure repayment of their note, the Drennens executed a deed of trust for the benefit of GNBT. The deed of trust granted GNBT a security lien in residential real estate subject to one or more prior mortgage loans.

51. In connection with this Second Mortgage Loan, as shown on their HUD-1 settlement statement, the following fees and costs were contracted for and payable at or before closing of the Drennens' loan:

| HUD-1 Line No. | Description | Paid To | Amount(s) |
|---|---|---|---|
| 801 | Loan Origination Fee | GNBT | 4,239.00 |
| 802 | Loan Discount | GNBT | 942.00 |
| 804 | Credit Report | GNBT | 50.00 |
| 811 | Underwriting Fee | GNBT | 200.00 |
| 812 | Flood Certification Fee | GNBT | 20.00 |
| 813 | Appraisal Fee | GNBT | 32.00 |
| 1101 | Settlement or Closing Fee | USA Title LLC | 150.00 |

14

| 1102 | Abstract or Title Search | USA Title LLC | 134.00 |
| 1103 | Title Examination | USA Title LLC | 450.00 |
| 1111 | Overnight Fee | USA Title LLC | 25.00 |
| 1112 | Document Review | USA Title LLC | 250.00 |
| 1113 | Processing Fee | USA Title LLC | 260.00 |
| 1201 | Recording Fee | Clay County Recorder of Deeds | 41.00 |

52. The HUD-1 is fraudulent in that the line items shown as being payable to GNBT in Section 800 were, other than perhaps a very small percentage, actually paid to Equity Guaranty or other affiliates of the Shumway Organization.

53. The HUD-1 is fraudulent in that the line items shown as being payable to USA Title LLC in Section 1100 were, other than perhaps a very small percentage, actually paid to Equity Guaranty or other affiliates of the Shumway Organization.

54. In connection with this loan, the Drennens were provided with a Federal Truth-In-Lending Disclosure Statement that stated that their Finance Charge was $150,605.00 and that their annual percentage rate was 18.3996%.

55. Both the Finance Charge and Disclosed APR on the Drennens' loan are materially inaccurate under 15 U.S.C. §§ 1605(f), 1606(c), 1635, 1638 and 1639 and Regulation Z, at 12 C.F.R. §§ 226.22, 226.23.

56. Because the Finance Charge and Disclosed APR are inaccurate, the Drennens are entitled to rescind their loan pursuant to 15 U.S.C. §§ 1602(u), 1635(f) and 1639(j) and 12 C.F.R. § 226.23(a)(3).

57. By a letter dated June 14, 2004, the Drennens made demand upon Defendants GMAC-RFC, Homecomings Financial, and FOIC, as receiver for GNB for rescission of their loan.

58. By a letter dated July 28, 2004, from Roy Arnold, Esq., counsel for GMAC-RFC and Homecomings, the Drennens' rescission request was refused.  This wrongful refusal violated 15 U.S.C. § 1635 and gives rise to damages under 15 U.S.C. § 1640(a).

## DAVID AND DIANE GARNER

59. In the winter of 2002, David and Diane Garner received a solicitation in the mail indicating that they had been pre-approved for a debt-consolidation second mortgage loan with CBNV.

60. The Garners contacted CBNV to apply for a second mortgage loan.  While they believed they were dealing with a bank, they were, in fact, dealing with the Shumway Organization and Equity Guaranty

61. CBNV and/or the Shumway Organization and Equity Plus, through the mails or wires, obtained the Garners' credit report and approved their second mortgage loan.

62. On or about March 23, 2002, CBNV closed the Garners' loan in Missouri.  On this date, the Garners first received their TILA and HOEPA disclosures.

63. In connection with the above-alleged predatory lending scheme, the Shumway Organization, using CBNV as its front, loaned the Garners a total loan of $40,000 to be repaid with interest (13.99%) in consecutive monthly installments over a period of 20 years.  The loan was a consumer loan obtained for personal, family or household purposes.

64. To secure repayment of their note, the Garners executed a deed of trust for the benefit of CBNV.  The deed of trust granted CBNV a security lien in residential real estate subject to one or more prior mortgage loans.

65. In connection with this Second Mortgage Loan, as shown on their HUD-1 settlement statement, the following fees and costs were contracted for and payable at or before closing of the Garners' loan:

| HUD-1 Line No. | Description | Payable to | Amount |
|---|---|---|---|
| 801 | Loan Origination Fee | CBNV | 800.00 |
| 802 | Loan Discount | CBNV | 3,000.00 |
| 808 | Lender Document Review Fee | CBNV | 150.00 |
| 809 | Lender Underwriting Fee | CBNV | 295.00 |
| 810 | Lender Application Fee | CBNV | 275.00 |
| 1101 | Settlement or Closing Fee | Resource Title LLC | 50.00 |
| 1102 | Abstract or Title Search | Resource Title LLC | 150.00 |
| 1103 | Title Examination | Resource Title LLC | 220.00 |
| 1105 | Document Preparation Fee | Resource Title LLC | 175.00 |
| 1201 | Recording Fee | Greene County Recorder of Deeds | 45.00 |

66. The HUD-1 is fraudulent in that the line items shown as being payable to CBNV in Section 800 were, other than perhaps a very small percentage, actually paid to Equity Guaranty or other affiliates of the Shumway Organization.

67. The HUD-1 is fraudulent in that the line items shown as being payable to Resource Title LLC in Section 1100 were, other than perhaps a very small percentage, actually paid to Equity Guaranty or other affiliates of the Shumway Organization.

68. In connection with this loan, the Garners were provided with a Federal Truth-In-Lending Disclosure Statement that stated that their Finance Charge was $83,875.99 and that their annual percentage rate was 16.158%.

69. Both the Finance Charge and Disclosed APR on the Drennens' loan are materially inaccurate under 15 U.S.C. §§ 1605(f), 1606(c), 1635, 1638 and 1639 and Regulation Z, at 12 C.F.R. §§ 226.22, 226.23.

70. Because the Finance Charge and Disclosed APR are materially inaccurate, the Garners are entitled to rescind their loan pursuant to 15 U.S.C. §§ 1602(u), 1635(f) and 1639(j) and 12 C.F.R. § 226.23(a)(3).

71. By a letter dated June 14, 2004, the Garners made demand upon Defendants GMAC-RFC, Homecomings Financial, and CBNV for rescission of their loan

72. By a letter dated July 28, 2004, from Roy Arnold, Esq., counsel for Defendants GMAC-RFC and Homecomings Financial, the Garners' rescission request was rescission request was refused. This wrongful refusal violated 15 U.S.C. § 1635 and gives rise to damages under 15 U.S.C. § 1640(a).

## SHAWN AND LORENE STARKEY

73. In the fall of 2001, Shawn and Lorene Starkey received a solicitation in the mail indicating that they had been pre-approved for a debt-consolidation second mortgage loan with GNBT.

74. The Starkeys contacted GNBT to apply for a second mortgage loan. While they believed they were dealing with a bank, they were, in fact, dealing with the Shumway Organization and Equity Guaranty.

75. GNBT and/or the Shumway Organization and Equity Guaranty, through the mails or wires, obtained the Starkeys' credit report and approved their second mortgage loan.

76. On or about October 31, 2001, GNBT closed the Starkeys' loan in Missouri. On this date, the Starkeys first received their TILA and HOEPA disclosures.

77. In connection with the above-alleged predatory lending scheme, the Shumway Organization, using GNBT as its front, loaned the Starkeys a total loan of $30,300 to be repaid

with interest (11.99%) in consecutive monthly installments over a period of 15 years. The loan was a consumer loan obtained for personal, family or household purposes.

78. To secure repayment of their note, the Starkeys executed a deed of trust for the benefit of GNBT. The deed of trust granted GNBT a security lien in residential real estate subject to one or more prior mortgage loans.

79. In connection with this Second Mortgage Loan, as shown on their HUD-1 settlement statement, the following fees and costs were contracted for and payable at or before closing of the Starkeys' loan:

| HUD-1 Line No. | Description | Paid To: | Amount ($) |
|---|---|---|---|
| 801 | Loan Origination Fee | GNBT | 3,030.00 |
| 802 | Loan Discount | GNBT | 606.00 |
| 804 | Credit Report | GNBT | 50.00 |
| 811 | Underwriting Fee | GNBT | 200.00 |
| 812 | Flood Certification Fee | GNBT | 20.00 |
| 1101 | Settlement or Closing Fee | USA Title LLC | 150.00 |
| 1102 | Abstract or Title Search | USA Title LLC | 134.00 |
| 1103 | Title Examination | USA Title LLC | 450.00 |
| 1111 | Overnight Fee | USA Title LLC | 25.00 |
| 1112 | Document Review | USA Title LLC | 250.00 |
| 1113 | Processing Fee | USA Title LLC | 260.00 |
| 1201 | Recording Fee | Clay County Recorder of Deeds | 41.00 |

80. The HUD-1 is fraudulent in that the line items shown as being payable to GNBT in Section 800 were, other than perhaps a very small percentage, actually paid to Equity Guaranty or other affiliates of the Shumway Organization.

81. The HUD-1 is fraudulent in that the line items shown as being payable to USA Title LLC in Section 1100 were, other than perhaps a very small percentage, actually paid to Equity Guaranty or other affiliates of the Shumway Organization.

82. In connection with this loan, the Starkeys were provided with a Federal Truth-In-Lending Disclosure Statement that stated that their Finance Charge was $39,391.81 and that their annual percentage rate was 14.9528%.

83. Both the Finance Charge and Disclosed APR on the Drennens' loan are materially inaccurate under 15 U.S.C. §§ 1605(f), 1606(c), 1635, 1638 and 1639 and Regulation Z, at 12 C.F.R. §§ 226.22, 226.23.

84. Because the Finance Charge and Disclosed APR are materially inaccurate, the Starkeys are entitled to rescind their loan under 15 U.S.C. §§ 1602(u), 1635(f) and 1639(j) and 12 C.F.R. § 226.23(a)(3).

85. By a letter dated June 28, 2004, the Starkeys made demand upon Defendants GMAC-RFC, Homecomings Financial and GNB, for rescission of their loan.

86. By a letter dated July 28, 2004, from Roy Arnold, Esq., counsel for GMAC-RFC and Homecomings Financial, the Starkeys' rescission request was rescission request was refused. This wrongful refusal violated 15 U.S.C. § 1635 and gives rise to damages under 15 U.S.C. § 1640(a).

## COUNT I

### (FAILURE TO HONOR VALID AND TIMELY DEMAND FOR RESCISSION)

87. Each proceeding paragraph of this Complaint is hereby incorporated as if fully set forth herein.

88. TILA establishes a right of rescission for any loan transaction in which the borrowers' principal dwelling is used as security. 15 U.S.C. § 1635(a). The rescission period extends until three years after consummation of the loan if no accurate and timely disclosures are given. 15 U.S.C. § 1635(f) and 12 C.F.R. § 226.23(a)(3). The right to rescind extends to an assignee.

89. As a result of the separate violations of TILA and HOEPA set forth above, Plaintiffs are entitled, among other things, to seek rescission of their loan. This right of rescission applies as against assignees. 15 U.S.C. §§ 1641(c) and (d).

90. The Plaintiffs' second mortgage loans were consumer credit transactions under 15 U.S.C. § 1635. Defendants retained security interests in the Plaintiffs' homes, which homes were the Plaintiffs' principal dwellings.

91. Each of the Plaintiffs made a timely demand for rescission by mail and facsimile and the facsimile transmissions were reported as received by Defendants.

92. Upon the Plaintiffs' exercise of their right to rescind, Defendants' security interests on the Plaintiffs' homes, along with the promissory notes executed by Plaintiffs, became void pursuant to 15 U.S.C. § 1635(b).

93. Each such request for rescission was wrongfully refused. As a result of Defendants' failure to rescind the Plaintiffs' second mortgage loans, Defendants are liable to Plaintiffs under 15 U.S.C. §§ 1635 and 1640(a)(3).

94. Plaintiffs are entitled to a return of all amounts, including finance charges, interest, closing costs, title charges and broker fees paid on their loans. Defendants have not returned these amounts to Plaintiffs.

95. Defendants have not terminated their security interests in the Plaintiffs' loans.

96. Because Defendants have not returned all amounts owed to Plaintiffs under 15 U.S.C. §§ 1635 and 1640 nor have they terminated their security interests in the Plaintiffs' homes, Plaintiffs are not obligated to make any tender of principal back to Defendants and are entitled to the entire principal amount of their loans pursuant to 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d)(3).

97. In any event, and as an alternative to the express provisions of 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d)(3) if such provisions are equitably modified by the Court, because the amounts that Defendants are liable to Plaintiffs exceed the amount of the principal that would be required to be tendered back to Defendants under 15 U.S.C. § 1635 had Defendants complied with the requirements of the statute, by way of off-set Plaintiffs have nothing to tender to Defendants.

98. Pursuant to 15 U.S.C. §§ 1640(a)(2)(A)(iii) and (3), for failing to rescind the Plaintiffs loans, to return all amounts owed to Plaintiffs and to terminate their security interests in the Plaintiffs' homes, Defendants are liable to Plaintiffs for statutory damages and all damages allowed under 15 U.S.C. §§ 1635 and 1640, including the costs of the action, together with reasonable attorneys' fees.

WHEREFORE, on their cause of action against Defendants, and in addition to any and all relief Plaintiffs seek in the matter captioned as Hobson v. Irwin Union Bank et al., CV-04-C-2351-W and/or as part of a multidistrict proceeding, MDL No. 1674, pending in the United

States District Court for the Western District of Pennsylvania, Plaintiffs pray for judgments against said Defendants, and each of them, as follows:

(a)     For a declaration that Plaintiff are entitled to rescind their loans and that Defendants' security interests in the Plaintiffs' homes are automatically void;

(b)     For an Order and Judgment finding that Defendants are liable as a matter of law to each Plaintiff Class member for all damages and declaratory and injunctive relief allowable under 15 U.S.C. §§ 1635, 1639, 1640 and 1641(d) for Defendants' failure to honor Plaintiffs' rescission demands, including all actual damages and statutory damages (which damages are separate and in addition to any damage that Plaintiffs are entitled to for Defendants' TILA and HOEPA violations and which are sought in the matter captioned as <u>Hobson v. Irwin Union Bank et al.</u>, CV-04-C-2351-W and/or as part of a multidistrict proceeding, MDL No. 1674, pending in the United States District Court for the Western District of Pennsylvania);

(c)     For a declaration that Plaintiffs are not required to make any tender of principal to Defendants for their failure to perform its obligations under 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d)(3) or, alternatively, a declaration that Plaintiffs may set off any and all amounts required to be tendered to Defendants with all amounts that Defendants are obligated to return to Plaintiffs;

(d)     For reasonable attorneys' fees as provided by law and statute;

(e)     For pre-and-post judgment interest as provided by law in amount according to proof at trial;

(f)     For an award of costs and expenses incurred in this action; and

(g)     For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

Dated: July 25, 2005

Respectfully submitted,

WALTERS BENDER STROHBEHN &
VAUGHAN, P.C.

By

   J. Michael Vaughan - Mo. Bar 24989
   David M. Skeens - Mo. Bar 35728
   Kip D. Richards - Mo. Bar 39743
   Garrett M. Hodes - Mo. Bar 50221

2500 City Center Square
12th & Baltimore
P.O. Box 26188
Kansas City, MO 64196
(816) 421-6620
(816) 421-4747 (Facsimile)

ATTORNEYS FOR PLAINTIFFS